The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Edmund Neal Thank you, Your Honor. May it please the Court, I'm Edmund Neal, counsel for the appellant Malik Wilder. Your Honors, this case is about lawful means. That's the fundamental requirement for inevitable discovery. There's no question the warrant was searched, but Mr. Wilder's bag was unlawful. The firearm obtained from that unlawful search should have been suppressed under the exclusionary rule, but the district court declined to do so. It instead applied the inevitable discovery doctrine, which, of course, is an exception to the exclusionary rule. The district court ruled police would have inevitably discovered the firearm in the bag after arresting Mr. Wilder in conducting an inventory search. And so just conceptually, there's two questions, as I understand them. One is a factual, well, a counterfactual, right, but one is in the nature of a factual question. What would, in fact, the police have done, right? And then the second question is, if they had done that thing, would that thing have been lawful, right? Those are sort of the two questions. Do you agree? Yes, Your Honor. That is the standard for inevitable discovery. Yes. Okay. And the district court found, as a factual matter, that they would have, in fact, done that thing, right? Yes, Your Honor. And that's a factual finding? It's a factual finding. Review for clear error? Well, Your Honor, it's a factual finding about when Mr. Wilder was arrested. And that's in Sebron. It's a question of fact precisely when the arrest occurred. The actual conclusion- That's a factual- I mean, that's a separate question. I don't tend to think that's a question of fact, but what the officers would have done strikes me as a classic factual finding to which an appellate court owes an enormous amount of deference to a trial court, right? Yes, Your Honor. Now, that is true, and that's, Your Honor, of course, talking about the standard of review in this case. Now, I would note two things, and it's addressed in the brief. In the McCraw case from 1990 from this court, that if the district court clearly erred in finding somebody was lawfully arrested, that ruling can be reversed based on clear error. And in this case, Officer Chinani, the officer who unlawfully searched Mr. Wilder's bag, he testified no less than six times that he did not arrest Mr. Wilder until after he located, found, and retrieved the marijuana. He did not arrest Mr. Wilder based- But can I ask why that matters? Because it seems to me that this court's decision- So your whole argument is like, he wasn't arrested until a certain time because he wasn't arrested until a certain time. We can't do inevitable discovery. That just seems directly contrary to C. And I know that you say that in C, it didn't happen until after the person was arrested, except for the part when I literally go to our opinion in C, and I look at page 223, where it says, they were preparing to arrest her, as in, it was before they actually arrested her. So any argument that as a matter of law, inevitable discovery doesn't work, if the person wasn't already under arrest, doesn't work because in C, the person wasn't under arrest when they did the search that we upheld under the inevitable discovery doctrine. Well, Your Honor, actually in C, the officers did two things. They had gone into the hotel room where Devin Bracey- I know, but preparing to arrest her is word for word from C. Yes, they first determined they had a probable cause to arrest her, and then they determined they would arrest her. And while during the arrest preparation process, i.e., getting her in handcuffs, getting her out of the room, taking her to the jail, they conducted the search in that case. In that case, the officers clearly testified they were going to arrest her based on the drug paraphernalia that had been found in the room prior. It had nothing to do with what was found in that bag. But here in this case, the district court found they were going to arrest- I mean, can I take a step back? I mean, admittedly, this is another counterfactual. Can we agree that, so after your client admitted to having nothing but a little weed, if the officers literally at that moment said, you're under arrest, this case would not be here, right? Your Honor, I would answer that question saying it's not could the officer- No, no, no, I know, it's a hypothetical, you're not conceding anything about this case, but just as a framing matter. If right after he said that, they had uttered the words, you are under arrest, this case is over. If we had that in the video, yes, Your Honor. No, I understand, I'm not in any way suggesting that's what happened, but you agree that that is what happened. That would be over because it is, in fact, illegal to possess even a little bit of weed, so they would have had actual probable cause to arrest him, and if they said, you are under arrest, would be done. If that had been shown on the body camera video- You're not conceding, I know you're not conceding, that's what happened. I totally understand. If Officer Ciannone had testified, I would have arrested him at that precise moment, either that testimony or on the body camera. He had reason to arrest him once he said that. He could have arrested him, but he would not have arrested him, though, that's the key.  I thought you said he didn't arrest him then, he arrested him later after he found the gun, but what he knew about the weed, he had probable cause to arrest. He told him, what is that, it's a little bit of weed, that's illegal. And your Honor- He said he would have been arrested anyway because of the marijuana, but I thought, hypothetically, I thought you would say yes to Judge Hite. Well, I just wanted to make clear that I'm not conceding- Those aren't the facts, though, but he could have arrested him, he would have. If the officer testified, I would have arrested him based on that statement, we wouldn't be here. I guess maybe take a step back to my framing questions, which were, there's two questions, what would the officer have done, and would it have been constitutionally permissible? So question one, question two, once your client utters the words, nothing but a little bit of weed, the answer to question two is done, because they could arrest him at that point, right? The only question is if they would have, I agree with that. But I'm saying, once he says that, the question of whether the Fourth Amendment authorized his arrest is over, right? Again, Your Honor, that is- Whether it authorized it, not whether they would have done it, but whether the Fourth Amendment would have authorized it. Would there have been probable cause? Yes. Is that what Your Honor's asking? Yes. Once a person says to a police officer, what you are seeing protruding out of my satchel is weed, that officer can, not that they would, I take your point. Look, depending on where we are in the country, various times, I'm not saying every single person who has marijuana on them gets arrested, officers constantly do that. They don't arrest people that they have reason to believe have marijuana on them. But the question is whether they could have done it. They certainly could have, right? In another case, they could have. But in this case, the officer would not have arrested Mr. Wilder. Okay, fine. But that's the critical question. The question is what the officer would have done. Yes, Your Honor, would. And not to repeat myself or whatever, but it's would. And we cited a couple of cases in the brief. I thought he said he would have arrested him anyway. He said he would have arrested him no matter what else he found, i.e. after he- He would have arrested him on the marijuana. Only after retrieving that bag from the bag. I thought he said he would have. What about the BOLO, whatever it's called? They got a, what do you call those things? Oh, a be on the lookout? Be on the lookout. These people are considered, they're both convicted felons and should be considered armed and extremely dangerous. This defendant and his girlfriend, I guess, they're considered armed and extremely dangerous. Now, so that when, they weren't just normal alibiing citizens that they were running, policemen were running into. Well, two points about that, Your Honor. Mr. Wilder was not in fact wanted. He was with Ms. Sinclair, who was the wanted individual in this case. And this case actually starts- No, it says both subjects, and this is bold language in the BOLO, I got it here in front of me, are convicted felons and should be considered armed and extremely dangerous. And that went to, the original motion was actually based on a Terry argument. The government expressly disclaimed any reliance on a Terry frisk and asserted- That's what the information they had at the time. They had this BOLO when they found these two people. And this, and that was the background of what transpired. That's what initiated this investigative detention. Exactly, right. And then you had to, they had that information. And then they, you ask him what that was, stick it out of his, whatever, the bag. And he said, it's just a little bit of weed. And the officer did not arrest Mr. Wilder. He searched that bag. When you asked him, he said he did not arrest him. But he had that BOLO information that this guy is considered armed and extremely dangerous. Well, what I was saying was the government disclaimed any reliance on a Terry frisk. And number two, the district court found-  He knew at that point, he had strong reason to believe he wasn't a bar boy. Right, Your Honor. And the government, well, the government argued search incident to arrest. And of course, the district court found that Mr. Wilder was secured and not within reaching distance under this court's decision in Davis. And the government has never disputed that finding. So the question is, did an unlawful search serve? You know, it seems to me we're getting tangled up in could have, would have, and everything. I mean, it's got to be more straightforward than that. I don't see how we get around our precedent in C. But there are three different events here. One is the arrest. And second is taking to the station house. And then third, I guess, is the inventory search. And those are the three things. And I want to say it indicates that the precise chronology of these three things isn't really crucial. Where did the officers mess up here? I mean, they had probable cause to arrest with the, when he says there's just a little bit of weed, man. Now, they didn't have to, as Judge Heitens points out, they didn't have to arrest, but they had probable cause to arrest. Okay, if you arrest someone, you can take them to the station house. And then an inventory search here, they have a form that they provide in terms of the items that should be checked for. And obviously, they have an inventory search for one simple reason, that the jail authorities want to keep drugs and weapons out of the jail. And so if the arrest is okay, if they take it to the station house is okay, and if the inventory search serves a perfectly legitimate purpose, I don't understand how the, how the officers acted unlawfully, given our precedent in C. Your Honor, this argument is getting too tangled in, and I'm trying to discern just by getting down to the fundamentals of where there was a misstep here. I don't understand it. Your Honor, the misstep was Officer Ciannone testifying to a search incident to arrest, not testifying to any standard inventory search or any standardized criteria. The government expressly disclaiming that any inventory would need to be created and telling the Dish Court there is no policy applicable to the facts of this case, other than... Well, but there is no search incident to arrest here. It didn't necessarily have to be a search incident to arrest under C. If he had the authority to arrest, he would have the authority to take an individual to the station house. If they're going to be admitted into the jail, they have the authority to conduct an inventory search. In fact, they'd be foolish not to. And again, just make sure we're clear about what C says. In C, Devin Bracey, the defendant's companion, was already going to be arrested for drug paraphernalia found in the room. In this case, Mr. Weiler is only arrested based on something that is unlawfully pulled out of his bag in violation of the Fourth Amendment. They're completely different factual circumstances. Mr. Weiler is never actually placed under arrest. Well, why isn't this more analogous to the old parry stop thing? The officer's entitled to protect themselves. And he was entitled to... He knew those people were armed, considered armed, and extremely dangerous. And he had this bag on him. And if he's going to be around, he may want to make sure there's no firearms in it. Well, Your Honor, the government expressly disclaimed any reliance on Terry. And I think they had to in light of this court's decision in Buster. I'm just throwing that out. I mean, why doesn't that dispose of him? Any way you look at it, I don't think you've got a leg to stand on, basically. The gun was proper. He seized and your guy felt guilty to it. Well, in Buster, the defendant was presently dangerous. There's different theories of upholding what happened. And several of them apply. You were saying something about Buster? Well, in Buster, the court pointed out that the defendant has to be presently dangerous. And in Buster, the defendant was not. In this case, Mr. Wilder was not. In analogous circumstances, in Davis... ...in front of his body. And the BOLO says, consider him armed. He's a convicted felon. Convicted felon. Consider him armed and extremely dangerous. And they knew it was him. Again, Your Honor, government did not raise Terry. They abandoned it expressly. And then search instances... I raised him. I'm just telling you my reaction to the situation. Well, I would just say that he was secured and not presently dangerous. Handcuffed behind his back. And restrained by an officer. Multiple officers, actually. Surrounded by officers. Not within a reaching distance of that bag. In a different case, maybe. But this is not that case. All right. Thank you. Thank you, Your Honors. Mr. Garner. Thank you. Good morning, and may it please the Court. Ben Garner on behalf of the United States. So there was a... Your opposing counsel argues that they should have done this, or they could have done this, or whatever. But does the case not bottom out on what they actually did and whether they took any kind of unlawful action? Your Honor, in this case, the government relied upon the inevitable discovery doctrine. In terms of the seizure of the firearm from Mr. Wilder's bag. There was testimony from Officer Shinani that he would have arrested Mr. Wilder. So before we get to a note, just to confirm, the government has not been relying on a Terry Frisk rationale, right? That is correct, Your Honor. The government's position below was that there was probable cause to search Mr. Wilder's backpack and disclaimed any basis upon Terry. And instead, the government below relied upon a search incident to lawful arrest, as well as the inevitable discovery doctrine. The district court found that Mr. Wilder would have been arrested even absent a search of Mr. Wilder's backpack, and that is ably supported by the testimony... And that made sense. Correct, Your Honor. It wasn't the theory you offered, but that's the one you're offering now. No, Your Honor, that was offered below in front of the district court as well, the inevitable discovery doctrine. So you made an alternative argument. Yes, Your Honor. Search incident lawful arrest, as well as inevitable discovery, was pursued below. Do we think what happened here is that this police officer just got confused about the difference between an inventory search and a search incident to arrest? Your Honor, I think that's... Certainly, my reading of the transcript strongly suggests that. You can tell different portions. He was almost using the words interchangeably. The district court, who was there assessing the testimony, it noted in his order that the court believed that Officer Shinani was using the words interchangeably, noted that no magic words are necessary. However, the district court continued... Which words was he using interchangeably? Search incident lawful arrest, as well as the... Inventory search. Inventory search, thank you. But the district court, nevertheless, methodically went through the testimony of Officer Shinani to conclude that there was a standardized policy with the Myrtle Beach Police Department. And it based that finding on Officer Shinani's testimony, as well as the body camera footage of the other officers who, prior to transportation, Mr. Wilder's transportation... So can I ask you... So the other thing that's confusing when I read this officer's testimony, whether this is clear error is a different question. But when I read what the officer says, it's like, what was the point at which it was inevitable he was going to be arrested? When I read the officer, old record, totally get, clear error, totally get. But when I just read it, it sounds like he's saying, when was he definitely going to get arrested? It's when I found the marijuana. It's like, well, but... And you agree with me, sorry. You can't rely on the finding of the marijuana to justify the search that produced the marijuana, right?  Okay. So help me out. It seems that he says over and over again, when was it inevitable he was being arrested? Once I found the weed.  And so what I distinguish, Judge Heitens, is the portions of the testimony where Officer Shinani seems to be alluding to when he subjectively believed Mr. Wilder was arrested, when he was actually arrested, versus at what point would Officer Shinani have arrested Mr. Wilder? When I placed him under arrest versus when I decided to place him under arrest? Yes, Your Honor. And I think the most clear portion of the transcript that supports the district court's finding is on page 76, when Officer Shinani made clear that he did not know there was marijuana, quote, until Mr. Wilder made the statement that there ain't nothing but a little bit of weed. And then immediately after that, Officer Shinani said, once I knew there was marijuana in the bag, he was going to be placed under arrest. Now, does an officer have to, is an officer compelled to conduct a search incident when you arrest with a, they didn't have a warrant in this case. He simply had the statement that it's just a little weed. An officer has probable cause to arrest in that situation. But then does an officer, is an officer compelled to conduct a search incident? Or is an officer without authority to, is it either impermissible or is an officer compelled to do it? Or does an officer have the option of not conducting a search incident and taking the arrestee to the station house? Just tell me what, because the whole thing is confusing as to whether an officer is compelled to make a search incident once a warrantless arrest is effectuated. Or is an officer allowed the option of taking the arrestee to the station house? Does an officer have that option? He does, Your Honor. An officer is not compelled, either at Myrtle Beach specifically, or an officer generally is not compelled to execute or to conduct any search. You don't have to conduct a search incident pursuant to the arrest, do you? Correct, Your Honor. All right. You can take the arrestee to the station house, can't you? That is correct. And you can conduct an inventory search here because of the obvious purpose of not having drugs in the facility and not having guns in the facility. It's a protection for the other inmates, in addition to keeping track of property. In most places, most jails do have inventory searches. So the question I have is, in terms of what was done here, the arrest was okay. There was probable cause. He could take it to the station house. He had that option as opposed to being compelled to conduct a search incident. And then they had the authority to conduct an inventory search. So if those three steps were valid, and say seems to indicate that the order in which all this takes place is not crucial, where's the problem? And the government contends to be sure that there is no problem. And to your point in terms of the policy, Officer Shinani, during the suppression hearing, was specifically asked what policy, if any, does your department have regarding searching someone prior to transporting him to jail? And he testified that, according to the standardized policies at Myrtle Beach... You don't have to as a matter of federal law. But I mean, I would think it might be good practice in many situations to conduct a search incident because you don't want someone riding around with you and everything with a gun. You would want to disarm the individual with a search incident. So I can see that having a search incident makes good sense. And not waiting for the inventory search to uncover the firearm. But the question of whether it makes good sense or not is a different question from whether there's a requirement under federal law that there be a search incident. And I don't think that requirement exists under federal law. It doesn't, Your Honor. And to your point, not only would it be imprudent to allow an arrestee to have a firearm in the back of a patrol car, it makes equal less sense to allow an arrestee to have a firearm taken into the jail context. And that's precisely what Officer Shinani testified to in terms of the policy at the Myrtle Beach Police Department. Can I take one step further, though, back? Sure. You would agree that just because an officer has probable cause, they don't have to arrest someone, right? Absolutely. You agree, in fact, we could probably take judicial notice of the fact that officers constantly have probable cause to believe people have committed arrestable offenses for which they don't arrest people. Absolutely, Your Honor. And so as I read this court's decision in C, as well as the Ninth Circuit's decision in Peterson, for which the government submitted a 28-J letter, is that the standard is that there's probable cause to arrest the subject. There's testimony or other evidence in the record that the officer would arrest the subject and that the subject would be bound for jail. I would find it a frightening situation if we were to say that an officer that has probable cause to arrest, I mean, has to make an arrest. I guess you could, you know, you think, does that extend to jaywalking or does that extend to expectorating or whatever? I mean, I would say that particularly when you're talking about relatively minor crimes and this one is relatively minor, the crime for which he was arrested. And I'm sure when he provided his confession, saying it's just a little weed, that he was relying on the fact that it was relatively innocuous and that the officer would just let it go. And in many cases, that would have been a good judgment on the arrestee's part. But, you know, once you got to the jail, there was good reason to say this could be a real problem in terms of what my friend Judge King is pointing out. You could have a person who's armed and dangerous and you want to make darn sure that person is not circulating among the detainee population. Right. And this court has explicitly recognized that as a legitimate administrative function of a inventory search is to make sure that a arrestee is not bringing to the jail any sort of item that could harm either himself or other inmates. Can I ask you a question that confused me when I was reading the briefs and I realized I don't think I know the answer to this. So the question of when a person is actually placed under arrest, not when the officer decides to place them under arrest, when you are arrested. Now your friend on the other side suggests that there may be some cases that suggest that that's a factual question reviewed for clear error. But then I'm thinking about like Ornelas and all the cases that come after Ornelas. Like when are you in Miranda custody? When is there reasonable suspicion? When is there probable cause? And the court has said all those questions are questions of law subject to de novo review. So is the question of when a person is actually under arrest a question of fact or a question of law? Judge Hines, I don't have... What is the standard of review for an appellate court reviewing a district court decision about when the moment that a person is actually under arrest? Judge Hines, here's what I will say is coming into this argument, I believe that it was a factual question. That very well may be because that's the way it was represented in the briefs and it wasn't thoroughly issued. However, as you know... Because I know whether someone's in Miranda custody is definitely de novo. Sure. So then it would seem to me that whether a person's under arrest is also probably de novo. Now, with the gloss that all like... Obviously, if the district court makes factual findings about what actually happened in the world, those are all clear error. Correct. But the question of whether those facts all add up to... And at that moment, a Fourth Amendment seizure that we call an arrest has taken place. I certainly understand that line of thinking. But, you know, I go back to the fact that, you know, under this court's decision in C, when the... No, I think it's a moderately friendly, helpful question because it might then suggest that what an officer says about when a person was actually under arrest may not be determinative or even particularly relevant. Exactly. That's the point I was about to make, is that the critical inquiry is... Or analysis focuses on, at least in this context, when the officer would have arrested the subject. And here, the testimony on that point is rather clear. I'm happy to answer any other questions that the panel may have. Otherwise, we'd ask that you affirm the district court's opinion. Any questions? Good. I have no questions either. Thank you. Mr. Neely. Thank you, Your Honor. Just to alleviate any concern that Judge King may have or the rest of the panel members may have, I just wanted to direct this court's attention to this decision, this court's decision in Alston from 2019. And again, discovery is not inevitable unless the government proves that police not only could have lawfully obtained the evidence, but also would have done so. So could and would do, in fact, matter, Your Honor. I just wanted to make sure that was clear. In terms of... And of course, I talked about a couple of Second Circuit cases. Those were Stokes and Heath. And those both talk about whether an officer could have arrested somebody is not the question. It's would that officer have arrested? And it actually is based on the officer's testimony. And as far as Judge Hyten's question about the standard of review in this case, I would agree that it is de novo legally when somebody is under arrest. Of course, the factual findings underpinning the scene of the arrest are reviewed for clear errors. And I'm only one of three judges. Could I be inclined on this evidence to think that this guy was under arrest when they approached him? No, Your Honor. Officer Ciannone made very clear that he was not under arrest. I know what the... I'm talking about me. I'm talking about me from what I know. I've been looking at this record. Your Honor, I think... That was well, all right. And you'd say no there. How about when he said, I've got... That's a little bit of weed. I would say it's a tarry detention, Your Honor. And again, that's also a legal question. This court reviews de novo. There they had... If that had reason to arrest, then they had reason to search him protectively. They had to protect themselves and the public. They had to protect the public because they knew that he was extremely dangerous. Well, Your Honor, that would be a search incident to arrest. Those are the criteria for a search incident to arrest. It would be a protective arrest, a protective search. And the Dish Court said this was not a... If you find a firearm in a protective search, it's certainly admissible in evidence and entitled to be prosecuted. The only way to do that would be... Beyond that, we're talking about hypotheticals. We've got to deal with facts, as Judge Wilkerson said. And the facts are what the facts are. Yes, the only two scenarios I... The judge ruled that all the inventory search was inevitable to discovery. And that's a theory, too, that fits. I think about any way you look at it here, your fellow's in a mess. He's in a mess because... Which he knew at the time. He's in a mess because the officer violated the Fourth Amendment and unlawfully searched his bag. And only then, based on the evidence found in that bag... I commend the officer. Can I ask you just how the BOLO lays into this? I will say, look, I think we can probably say as a descriptive matter... I mean, I literally stayed in a hotel room last night that had a warning that said, don't smoke marijuana in this hotel room. So notwithstanding the fact that marijuana is still legal as a matter of federal law, I think every police officer in the world knows that lots and lots of people are using marijuana in violation of some state and federal laws. But the BOLO, right? So in asking the question, would this officer have arrested a person for having just a little weed? I was like, I mean, in general, maybe not. But like a person that was the subject of a BOLO about armed robberies? Yeah. I think an officer probably would arrest that person for having just a little bit of weed, don't you? Doesn't that seem extremely plausible? Your Honor, again, we're dealing with speculation, which in Nixley-Williams in footnote five, the Supreme Court says we were looking at demonstrated historical facts, not speculative elements. Sure, but I guess in terms of determining whether the district court's factual finding that the officer would absolutely have arrested him the moment the officer heard the words, just a little weed, it feels like the BOLO is relevant context in terms of the plausibility of the officer's claim. I definitely would have arrested him once I heard these words. I think the BOLO goes to the initial Terry investigative detention. That's the relevance of the BOLO. That's why the government... I could easily imagine an officer on the scene saying, thank you, you've just given me an excuse to arrest you, which is something I would have liked to do anyway, given the BOLO. Well, Your Honor, again, the temporal sequence is what's important. And say that's, obviously, as I discussed, the defendant's companion was already going to be arrested for the drug paraphernalia. The officers not only determined they had probable cause, they determined they were going to arrest Devin Bracey for the possession of the drug paraphernalia. And in terms of... I just want to quickly address the Peterson case that the government filed in the Rule 28J letter. That case is no different than say, that was a defendant who had misdemeanor warrants, but then during the arrest scene, resisted arrest, which was a felony, and therefore, they were going to arrest him anyway, not for anything they found. And, Your Honor, we would just ask this court to reverse the district court suppression ruling and vacate Mr. Wilder's conviction. Thank you, counsel. Are you appointed? Yes, Your Honor. That wasn't on our papers. I didn't see you were court appointed. I'm a federal public defender. I represented Mr. Wilder from his arraignment through today. Whatever your status is, we thank you. Thank you, thank you. I'm an AFPD, yes. And you too, sir. We'll adjourn court and come down and greet counsel. This honorable court stands adjourned. Signee die. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, Toby J. Heytens